**In re RICHMOND UNIFIED SCHOOL DISTRICT, Debtor.**

No. 91–42434 J.

United States Bankruptcy Court,
N.D. California.

Nov. 5, 1991.

Norman LaForce, Berkeley, Cal., for Citizens' Committee for the Richmond Schools.

Robert L. Hughes, Michael H. Lewis, Lempres & Wulfsberg, Oakland, Cal., for Richmond Unified School Dist.

Andrea T. Porter, Nicholas Ward, Murphy, Weir & Butler, San Francisco, Cal., for United Teachers of Richmond CTA/NEA and Public Employees' Union Local No. 1.

Ronald Ryland, Sheppard, Mullin, Richter & Hampton, San Francisco, Cal., for Security Pacific Nat. Bank.

Robert J. Bezemek, Oakland, Cal., for Richmond Federation of Teachers.

Paul S. Hoffman, Manatt, Phelps & Phillips, Los Angeles, Cal., for Laidlaw Transit, Inc.

Michael Buckley, Crosby, Heafy, Roach & May, Oakland, Cal., for Blue Cross of California.

Linda Stanley, Nossman, Gunther, Knox & Elliott, San Francisco, Cal., for Deborah Pearce.

## DECISION

EDWARD D. JELLEN, Bankruptcy Judge.

The issue before the court is whether the Richmond Unified School District (the "District") is entitled to an order granting its motion to dismiss its pending Chapter 9 case. The court holds in the affirmative.

## I. BACKGROUND

On April 19, 1991, the District filed a petition under Chapter 9 of the Bankruptcy Code. The District's largest creditor was the State of California (the "State"), which filed a proof of claim for an amount exceeding $9,500,000. Other large pre-petition creditors included Security Pacific National Bank, as trustee for the holders of certain Certificates of Participation, and IBM Corporation. The District owed each of these creditors approximately $9,000,-000.

At the time of the petition, not only was the District unable to repay its debts on a timely basis, it was also without the funds it needed to operate its schools.

On April 21, 1991, the Superior Court of Contra Costa County, State of California, in an action entitled *Butte v. Richmond Unified School District, et al,* (No. C–91–

01645), ordered the State together with the State Controller and State Superintendent of Public Instruction (the "Superintendent") to "ensure, by whatever means they deem appropriate, that the students of the District are provided with a public education ..." through the end of the school year. *Id.* After the superior court announced its ruling, the State Controller and Superintendent entered into an agreement under which the State agreed to loan the District $19,000,000 from existing state funds.

In consideration of the loan, the parties agreed that the Superintendent would "assume all the legal rights, duties, and powers of the [District's] governing board." Section 2 of Agreement dated May 1, 1991. In an implementing order filed May 2, 1991, which is now on appeal, the superior court ruled that the Superintendent had the authority under state law to relieve the District's governing board of its legal duties and appoint a trustee.

On May 2, 1991, the Superintendent appointed Fred J. Stewart (the "Administrator") to govern the District on the Superintendent's behalf. The State then advanced the $19,000,000 to the District.

On August 27, 1991, the District, operating under the Administrator's control, moved to dismiss its pending Chapter 9 case. A Citizens' Committee for the Richmond Schools, the Richmond Federation of Teachers, the United Teachers of Richmond, CTA/NEA, and Public Employees' Union Local No. 1 opposed the motion. At least one member of the school board also opposed the motion.

The opponents of dismissal argue that the court should not dismiss the case if dismissal is not in the best interest of creditors and that dismissal is not in the best interest of creditors for two major reasons. First, they argue that the District has not filed a plan for the adjustment of its debts, and has not presented a viable repayment program to be implemented after a dismissal. Therefore a dismissal would be premature.

Second, they argue that the State, which is in control of the District through the Administrator, is subject to a conflict of interest because it is also the District's largest creditor. Therefore, the opponents argue that dismissal is not in the best interest of creditors because the State will exercise its power to the unfair advantage of the District's other creditors. The Citizens' Committee raises the additional argument that the State's assumption of control was illegal and that the Administrator therefore acted without authority when he caused the District to move for dismissal.

## II. DISCUSSION

Bankruptcy Code Section 930[1] provides as follows:

(a) After notice and a hearing, the court may dismiss a case under this chapter for cause, including—

(1) want of prosecution;

(2) unreasonable delay by the debtor that is prejudicial to creditors;

(3) failure to propose a plan within the time fixed under section 941 of this title;

(4) if a plan is not accepted within any time fixed by the court;

(5) denial of confirmation of a plan under section 943(b) of this title and denial of additional time for filing another plan or a modification of a plan; or

(6) if the court has retained jurisdiction after confirmation of a plan—

(A) material default by the debtor with respect to a term of such plan; or

(B) termination of such plan by reason of the occurrence of a condition specified in such plan.

(b) The court shall dismiss a case under this chapter if confirmation of a plan under this chapter is refused.

At first glance, this provision would appear to apply only to an involuntary dismissal and be silent as to the standards the court is to apply when the debtor seeks a voluntary dismissal. Section 930 does require "cause" as a condition to dismissal. It also provides a non-exclusive list of ex-

---

1. All further statutory references herein are to the Bankruptcy Code.

amples of "cause," but does not define "cause."

By way of comparison, sections 1208 and 1307, the dismissal provisions that govern cases under Chapters 12 and 13, provide that a debtor who files an original petition under such chapters is entitled to an order of dismissal. Section 707(a), which is similarly silent with respect to a voluntary dismissal, has been construed to entitle a Chapter 7 debtor to a voluntary dismissal absent a showing of legal prejudice to the creditors. *In re Hall*, 15 B.R. 913 (9th Cir.BAP 1981). The same rule would presumably apply to a Chapter 11 debtor's motion to dismiss pursuant to section 1112(b), absent a finding by the court that conversion to Chapter 7 would be in the best interest of creditors and the estate. *In re International Airport Inn Partnership*, 517 F.2d 510, 512 (9th Cir.1975).

■ As to Chapter 9, the court holds, based upon a review of Chapter 9 as a whole, that prior to confirmation and absent a clear waiver of its autonomy rights under section 904,[2] discussed *infra*, a Chapter 9 debtor's request for dismissal is "cause" for dismissal and that the District is entitled to an order of dismissal without necessity of an evidentiary showing that dismissal would be in the best interest of creditors. Any other result would be anomalous and only serve to postpone the inevitable.

■ Article I, Section 10 of the United States Constitution prohibits the states, but not Congress, from passing any law that impairs obligations of contract. Consequently, any legislation that would permit municipalities to scale down their debts without the consent of each affected creditor must be federal. At the same time, the Tenth Amendment guarantees the sovereign powers of the states. Consequently, any federal debt relief legislation affecting municipalities must be sufficiently narrow in scope to avoid intrusion by the federal courts on the sovereign power of the states.[3]

■ Chapter 9 seeks to reconcile these two requirements by providing the debtor with an array of bankruptcy powers to enable it to achieve financial rehabilitation with very few, if any, corresponding limitations and duties of the type to which a Chapter 11 debtor is subject. For example, a Chapter 9 debtor is not subject to the reporting and other general duties of a Chapter 11 debtor in possession under section 1107, and pursuant to section 904, may borrow and spend without court authority.[4] Unlike any of the other chapters, Chapter 9 makes no provision for conversion of the case to another chapter or for an involuntary liquidation of any of the debtor's assets.

■ At the same time, a Chapter 9 debtor enjoys a full expanse of bankruptcy powers, including the benefit of an enhanced automatic stay pursuant to sections 362(a) and 922(a), the right to avoid preferences, fraudulent conveyances and other transfers as provided in sections 544 through 549, the authority to borrow monies on the security of liens senior to existing liens of record pursuant to section 364(c), the right to reject executory contracts pursuant to section 365 and the abili-

---

**2.** A Chapter 9 debtor may, through a confirmed plan or by consent, divest itself of its autonomy rights under section 904, and thereby provide the court with a basis to deny in future motion to dismiss. Such, however, is not the situation here.

**3.** The Supreme Court has stricken down federal bankruptcy legislation affecting municipalities that did not adequately regard the sovereignty of the states and has upheld legislation that did. Compare *Ashton v. Cameron County Water Improvement District No. One*, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936) and *United States*

*v. Bekins*, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938).

**4.** Section 904 provides as follows: "Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the debtor's use or enjoyment of any income-producing property."

ty to bind all creditors by a confirmed plan pursuant to section 944.

The legislative history for Chapter 9 states:

> Chapter 9 provides essentially for Federal court protection and supervision of a settlement between the debtor municipality and a majority of its creditors. A municipal unit cannot liquidate its assets to satisfy its creditors totally and finally. Therefore, the primary purpose of Chapter 9 is to allow the municipal unit to continue operating while it adjusts or refinances its creditor claims...." House Report No. 95–595, 95th Cong., 1st Session 263 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6221.

Thus, unlike the other Chapters, Chapter 9 does not attempt to balance the rights of the debtor and its creditors, but rather, to meet the special needs of a municipal debtor. As the Ninth Circuit Court of Appeals stated:

> [T]he principle of ordinary or private bankruptcy that the assets of the bankrupt, including his property, must be effectively applied to the debts, is sought to be applied to the situation before us. The bankruptcy of a public entity, however, is very different from that of a private person or concern. *Newhouse v. Corcoran Irrigation District*, 114 F.2d 690 (9th Cir.1940).

It follows that many of the principles that apply in the other chapters of the Bankruptcy Code are of limited assistance in construing of Chapter 9.

█ A Chapter 9 case may be commenced only by the debtor; no provision is made in the Bankruptcy Code for the filing of an involuntary Chapter 9 case to protect the interest of creditors. The legislative history to section 303 states:

> Involuntary cases are not permitted for municipalities, because to do so may constitute an invasion of State sovereignty contrary to the Tenth Amendment, and would constitute bad policy...." House Report No. 95–595, 95th Cong., 1st Sess.

321 (1977), U.S.Code Cong. & Admin.News 1978, p. 6278; Senate Report No. 95–989, 95th Cong., 2d Sess. 31 (1978), U.S.Code Cong. & Admin.News 1978, p. 5818.

█ After the debtor files the petition, the court is prohibited by section 904 from interfering with "any of the political or governmental powers of the debtor." Consequently, unlike the situation in a Chapter 11 case, the court cannot appoint a trustee to manage or control a debtor, whether or not cause exists for such an appointment.[5] If the debtor's management fails to prosecute the case or is responsible for unreasonable delays that are prejudicial to creditors, the sole remedy provided is dismissal pursuant to section 930(a)(1) or (2).

█ Section 904 also prohibits the court from interfering with "any of the property or revenues of the debtor" or with "the debtor's use or enjoyment of any income producing property." Thus, there is no "estate" under section 541, and the debtor is free to use, sell or lease property without regard to the restrictions in section 363. See section 901. Should a debtor do so irresponsibly, the sole remedy provided is dismissal for cause pursuant to section 930.

█ No party other than the debtor may propose a plan, section 941, or modification of a plan, section 942. If a debtor fails to propose a plan on a timely basis, or if the debtor proposes a plan that cannot legally be confirmed or that creditors do not accept, the sole remedy provided is dismissal pursuant to sections 930(a)(3), (4) or (5) or 930(b).

Given these restrictions, precious little would be served by the continuation of a case that the debtor wishes dismissed before a plan has been confirmed.

█ The opponents of dismissal nevertheless argue that the debtor is insolvent, has not presented a viable non-bankruptcy alternative to the adjustment of its debts

---

**5.** The court may appoint a trustee pursuant to section 926 for the limited purpose of prosecut-

ing avoidance actions.

by means of a Chapter 9 plan, and that the creditors will be better off without a dismissal.

The court might find this argument persuasive if this were a Chapter 11 case, in which a creditor could file a plan, section 1121(c), or in which the court could appoint a trustee, section 1104(a), or order a liquidation, section 1112(b), in the event of a failure by the debtor to prosecute the case in good faith. This, however, is not a Chapter 11 case; the only remedy the Bankruptcy Code establishes for the benefit of creditors of a Chapter 9 debtor that has failed or refuses to file an acceptable plan is dismissal.

■ Moreover, no legal prejudice to any party in interest will result from a dismissal of the present case. See *In re International Airport Inn Partnership; In re Hall.* Rather, a dismissal will operate to restore to the creditors and other parties in interest all their procedural and substantive rights under applicable nonbankruptcy law that the petition stayed.

■ The opponents of dismissal also argue that the aggregate of the pre- and post-petition debts which the District owes to the State is now in excess of $36,000,000 and that the State, which now controls the District through its Administrator, therefore has a conflict of interest. The issue, however, is not whether the State has a conflict of interest, but rather, whether it has an impermissible conflict of interest that provides a valid basis for the court to deny an otherwise meritorious motion to dismiss. The court holds in the negative for several reasons.

In the first place, unless the Administrator is divested of authority for reasons unrelated to the matters now before this court, he will retain control of the District, whether or not the court dismisses the case, because, as previously mentioned, the court may not interfere with the District's management, section 904; *Spellings v. Dewey*, 122 F.2d 652 (8th Cir.1941). Secondly, and more significantly, Chapter 9 was drafted to assure that application of the federal bankruptcy power would not infringe upon the sovereignty, powers and rights of the states,[6] including, presumably, states alleged to have a conflict of interest.

In recognition of this concept, Congress has included in section 903 a reaffirmation that Chapter 9 does not limit or impair the power of the states to control municipalities, and section 109(c)(2) limits the availability of Chapter 9 to debtors authorized by state law to commence Chapter 9 proceedings.

It follows that the State's alleged conflict of interest is not a valid basis for denial of the debtor's motion to dismiss.

■ Finally, the Citizens' Committee argues that the agreement divesting the school board of its authority, the superior court's order upholding the agreement, and the Superintendent's appointment of the Administrator violate state law, and that the District's motion, which it filed at the behest of the Administrator, is therefore defective. This argument fails. The superior court's order remains in effect, and therefore, as things now stand, the Administrator acted within his authority. If, in the future, his appointment is invalidated and control of the District is returned to the local school board, and if the school board wishes to file another Chapter 9 case, it may do so pursuant to sections 349(a) and 901(a), which operate to preserve the right of the District to file a subsequent case.

## III. CONCLUSION

The District is entitled to an order dismissing the case. This memorandum will constitute the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, applicable herein via Bankruptcy Rules 9014 and 7052.

---

**6.** House Report No. 95–595, 95th Cong., 1st Sess. 263 (1977), U.S.Code Cong. & Admin.News 1978, p. 6221.