339 F.3d 782
 In re CITY OF DESERT HOT SPRINGS, Debtor.
Silver Sage Partners, Ltd., Richard Earlix, Robert E. Fillet, Paul Saben, Michael Link, Edward Moore, Jr. and Albert Pimentel, Appellant,
v.
City of Desert Hot Springs, Appellee.
 No. 02-55835.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 3, 2003.
 Filed April 29, 2003.
 Amended August 11, 2003.
 
 COPYRIGHT MATERIAL OMITTED William J. Davis, Davis & Company, Los Angeles, CA, for the appellants.
 James O. Johnston, Jr., Hennigan, Bennett & Dorman, Los Angeles, CA, for the appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Perris, Marlar and Montali, Bankruptcy Judges, Presiding. BAP No. CC-02-01164-MoPMa.
 Before FERGUSON, HALL, and BERZON, Circuit Judges.
 ORDER
 CYNTHIA HOLCOMB HALL, Circuit Judge.
 
 
 1
 The opinion filed April 29, 2003, and found at 327 F.3d 930, is hereby amended as follows:
 
 
 2
 p. 931, first paragraph, line 5: Change "motion to dismiss" to "objection to and motion to dismiss"
 
 
 3
 p. 931, first paragraph, line 10: Change "moved to dismiss the bankruptcy" to "objected to and moved to dismiss the bankruptcy"
 
 
 4
 p. 933, final paragraph of "Background" section: Delete the first sentence and replace with: "In bankruptcy court, Silver Sage objected to and moved to dismiss the bankruptcy because it claimed that the City filed the bankruptcy in bad faith."
 
 
 5
 p. 933, first sentence of "Waiver" section: Change "denial of the motion to dismiss" to "denial of the motion"
 
 
 6
 p. 936, first full paragraph, first sentence: Change "in the context of motions to dismiss" to "in the context of objections to and motions to dismiss a bankruptcy" p. 936, first full paragraph: Delete second sentence and replace with the following: "A court's denial of such a motion merely allows the municipality to proceed with the bankruptcy."
 
 
 7
 p. 936, second column, line 5: Change "motion to dismiss" to "objection to"
 
 
 8
 p. 937, first full paragraph: Delete the second sentence and replace with the following: "As noted above, the procedures that must be followed before an order for relief is granted in an involuntary case are similar to the procedures that must be followed before relief is granted in any other lawsuit. The procedures to be followed before relief is granted in a chapter 9 case, however, cannot be similarly characterized."
 
 
 9
 p. 937, first full paragraph, last sentence: Change "debtors will go into bankruptcy." to "debtors will file for bankruptcy."
 
 
 10
 p. 937, first full paragraph, last sentence: Add footnote 4: "We do not decide whether a Chapter 9 order for relief issues automatically once the municipality files a voluntary petition, 11 U.S.C. § 301, or whether the court must first consider objections to the bankruptcy under 11 U.S.C. § 301(c) before entering the order for relief. Compare Collier on Bankruptcy, 15th ed. revised, § 921.04[5] with In re Colorado Centre Metropolitan Dist., 113 B.R. 25, 27 (1990). Regardless of when the order for relief is entered, we hold that chapter 9 supplies a creditor with adequate protections against irreparable harm to distinguish In re Mason, 709 F.2d 1313."
 
 
 11
 p. 938, first full paragraph, first sentence: Change "The denial of a motion to dismiss" to "The denial of an objection to and a motion to dismiss"
 
 
 12
 p. 938, first sentence of "Conclusion" section: Change "motion to dismiss" to "motion to dismiss and objections to"
 
 
 13
 p. 938, second sentence of "Conclusion" section: change "motion to dismiss" to "motion"
 
 
 14
 With this amendment, the panel has voted to deny appellant's petition for panel rehearing. Judge Berzon has voted to deny the petition for rehearing en banc and Judges Ferguson and Hall so recommend. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.
 
 
 15
 The petition for panel rehearing and the petition for rehearing en banc are DENIED.
 
 
 16
 The clerk shall accept no further filings in this specific appeal.
 
 OPINION
 
 17
 Silver Sage Partners, Ltd. ("Silver Sage") appeals the Bankruptcy Appellate Panel's ("BAP") dismissal of its appeal from an order of the bankruptcy court denying Silver Sage's objection to and motion to dismiss a chapter 9 bankruptcy. After the City of Desert Hot Springs ("City") filed for bankruptcy protection under chapter 9 of the bankruptcy code, 11 U.S.C. § 901 et seq., Silver Sage objected to and moved to dismiss the bankruptcy, claiming that it was brought in bad faith. The bankruptcy court denied its motion. Silver Sage appealed to the BAP. The BAP construed Silver Sage's appeal as interlocutory and exercised its discretion not to hear the appeal. Silver Sage argues here that the BAP erred by construing its appeal as interlocutory. Silver Sage claims that the bankruptcy court's order was a final decision and the BAP was therefore obliged to hear an appeal from such a decision. 28 U.S.C. § 158(a)(1).
 
 
 18
 The bankruptcy court had jurisdiction over Silver Sage's motion to dismiss the bankruptcy under 28 U.S.C. §§ 157 and 1334(a). The BAP had jurisdiction pursuant to 28 U.S.C. § 158(a). Because the bankruptcy court's order was interlocutory, we have no jurisdiction and DISMISS the appeal.
 
 BACKGROUND
 
 19
 Silver Sage is a partnership organized to purchase and develop low income housing. After the City refused to authorize Silver Sage to build certain low income housing projects, Silver Sage sued the City for, inter alia, violations of the Federal Fair Housing Act. A trial was held in the federal district court for the central district of California. A jury found the City liable and awarded Silver Sage approximately three million dollars in damages. The City moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Shortly after the jury verdict but before the district court ruled on the City's new trial motion, Silver Sage served a writ of execution on the City's bank, thereby freezing funds the City used for basic city services, such as payroll, utilities and insurance premiums for worker's compensation. The district court quashed the writ and ordered Silver Sage to show cause for why it should not be sanctioned.
 
 
 20
 The district court denied the City's motion for a judgment notwithstanding the verdict. The district court, however, found the jury's award of damages "grossly excessive" but denied the motion for a new trial on the condition that Silver Sage accept a remittitur to $388,146.20. Silver Sage rejected the remittitur and a new trial on damages was held. The second jury awarded Silver Sage one dollar. The district court denied both Silver Sage's motion to amend the damages award and its motion for a new trial.
 
 
 21
 Silver Sage appealed to this court. Because the district court abused its discretion by vacating the first jury's award of damages, we reversed and reinstated the original award of damages. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir.2001). Around the time that our opinion was filed, the City began consulting with bankruptcy experts in contemplation of possibly filing for bankruptcy, under Chapter 9 of the Bankruptcy Act.
 
 
 22
 The mandate from this court issued about six months after our opinion was filed. Upon issuance of the mandate, the City asked for assurances from Silver Sage that it would not again attempt to freeze the City's bank accounts. Silver Sage responded by demanding that it be paid and refusing to give the City any assurances. The City then filed a motion in district court that would order Silver Sage not to take any illegal actions to collect its judgment. Silver Sage responded that if the City did not express its willingness to immediately pay the judgment within two days, it would begin the collection process. The City then sought ex parte relief in the district court, seeking an order that would temporarily restrain Silver Sage from levying on its bank accounts. Silver Sage then told the City that it would not seek to freeze the City's bank accounts if the City agreed to several conditions. Silver Sage demanded that: 1) the City agree to an order from the district court that it immediately pay the judgment; 2) the City propose a plan within three weeks to pay the judgment and attorney's fees; 3) the City agree to make no expenditure not in the regular course of business; and 4) the City agree that any payment that Silver Sage disputes is not in the regular course of business not be relied upon to justify the City's not paying the judgment or interest on the judgment. The City decided it could not meet those demands. The district court denied the city's motion for ex parte relief with no explanation.
 
 
 23
 The City apparently believed that Silver Sage was not interested in negotiating in good faith a plan to pay the judgment. Before the hearing on the City's original motion to stop Silver Sage from taking illegal action to enforce its judgment, the City filed a voluntary petition for bankruptcy under chapter 9 of the bankruptcy code, 11 U.S.C. § 901 et seq. As a result of the petition for bankruptcy, an automatic stay was placed on all efforts by Silver Sage to collect its judgment. 11 U.S.C. § 362.
 
 
 24
 In a press release, the City stated that it commenced the bankruptcy because "Silver Sage has threatened to seize the city bank accounts and levy on city assets." According to an article in the Desert Sun, the Mayor of the City said that as a result of its filing for bankruptcy, it would likely only pay 10 to 20 cents for every dollar it owed.
 
 
 25
 In bankruptcy court, Silver Sage objected to and moved to dismiss the bankruptcy because it claimed that the City filed the bankruptcy in bad faith. The bankruptcy court denied the motion on February 15, 2002. Silver Sage filed a notice of appeal and made a motion in the BAP for leave to appeal. The BAP refused to hear the appeal, construing it to be from an interlocutory order. Silver Sage appealed to this court. Silver Sage does not ask us to rule on the merits of its claim that the City filed for bankruptcy in bad faith. Rather, it asks that we remand the case to the BAP and order the BAP to consider the appeal on the merits. The City contends that this court is without jurisdiction.
 
 STANDARDS OF REVIEW
 
 26
 We review our own jurisdiction de novo. Miller v. Commissioner, 310 F.3d 640, 642 (9th Cir.2002). Whether a bankruptcy court's decision is final, under 28 U.S.C. § 158(d) is a question of law reviewed de novo. Alexander v. Compton (In re Bonham), 229 F.3d 750, 760-61 (9th Cir.2000).
 
 WAIVER
 
 27
 The City argues that Silver Sage waived the argument that the bankruptcy court's denial of the motion was a final decision. We reject the City's argument. If a party fails to argue to the court below that a decision of the bankruptcy court is final, we will not consider such an argument. Ryther v. Lumber Products Inc. (In re Ryther), 799 F.2d 1412, 1414 (9th Cir.1986). In Ryther, we noted that if a litigant is unsure about the nature of an order, the litigant should file both a notice to appeal and a motion for leave to appeal before the BAP or district court. Id. Silver Sage did just that. Moreover, in Silver Sage's motion for leave to appeal before the BAP, Silver Sage argued in part that the BAP was obliged to hear the appeal because it was from a final decision of the bankruptcy court. Silver Sage therefore properly raised the issue before the BAP and we consider it.
 
 JURISDICTION
 
 28
 The courts of appeals do not have jurisdiction to hear interlocutory appeals in bankruptcy cases. Whether we have jurisdiction therefore depends upon the nature of the bankruptcy court's order denying Silver Sage's motion to dismiss. Parties may appeal decisions of a bankruptcy court to either the district court or to the BAP. 28 U.S.C. § 158(a-b). The district court or BAP must hear appeals from final decisions of the bankruptcy courts. So must we. It is within the discretion of the district court and the BAP, however, to hear interlocutory appeals. Id. at 158(a). We have no jurisdiction to consider whether such exercises of discretion are proper. The courts of appeals only have jurisdiction to review the "final decisions, judgments, orders and decrees" entered by the BAP or district courts. Id. at § 158(d).[1] Silver Sage argues that the BAP erred by construing its appeal as interlocutory and should have construed it to be an appeal from a final decision. The City, on the other hand, argues that the BAP correctly construed the nature of Silver Sage's appeal and it therefore had discretion not to hear the appeal. The City furthermore argues that we are without jurisdiction because the BAP's exercise of discretion in this regard is not subject to our review. We agree with the City — the BAP had discretion to not hear Silver Sage's appeal and this exercise of discretion is not subject to our review.
 
 
 29
 We have developed a "pragmatic" approach to deciding whether orders in bankruptcy cases are final, "recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." In re Mason, 709 F.2d 1313, 1317 (9th Cir.1983). Although our approach to finality is quite flexible in bankruptcy cases, traditional finality concerns still "dictate that we avoid having a case make two complete trips through the appellate process." Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1043 (9th Cir. 1997) (internal quotations and citations omitted).
 
 
 30
 We have squarely addressed the issue of whether the denial of a motion to dismiss a chapter 11 bankruptcy for bad faith is a final decision. In In re 405 N. Bedford Dr. Corp., 778 F.2d 1374 (9th Cir.1985), two creditors filed a motion to dismiss a corporation's voluntary petition for chapter 11 bankruptcy, arguing that the petition was filed in bad faith. Id. at 1376. After the bankruptcy court denied the motion and the district court affirmed, the creditors sought review in this court. We held that the bankruptcy court's denial of the creditors' motion to dismiss was not a final decision. Id. at 1377. We were not convinced that the creditors were faced with irreparable injury by the denial of the motion. We pointed to several provisions of the bankruptcy code that protected their rights. Id. at 1377-78. We further noted that the bankruptcy at issue was a voluntary one. In involuntary bankruptcies, a debtor's property is immediately subject to liquidation by the courts. Creditors are not subject to such drastic measures when a voluntary petition is allowed to proceed. Id. at 1378. Finally, we found that immediate appeals from denials of motions to dismiss would cause unnecessary delay because the bankruptcy court would have to choose between delaying the reorganization process pending appeal or continuing the process at the risk that it will be all for naught. Id. at 1379. In In re Rega Properties, 894 F.2d 1136 (9th Cir.1990), we again addressed the issue of the nature of an appeal from the denial of a motion to dismiss a chapter 11 bankruptcy for bad faith filing. We came to the same conclusion as 405 N. Bedford Dr. Id. at 1137-38.
 
 
 31
 Were this a chapter 11 case, we could dispose of this appeal by merely citing the two cases discussed above. The City asks us to do just that. This is not a chapter 11 case, however. This is a chapter 9 case and, as Silver Sage correctly points out, there are significant differences between a chapter 11 bankruptcy and a chapter 9 bankruptcy. These differences change the analysis of the question of finality in such a way that we cannot simply rely on 405 N. Bedford Dr. and Rega Properties alone to resolve this appeal.
 
 
 32
 Congress, in an effort to avoid possible constitutional problems, designed chapter 9 of the bankruptcy code in a manner much different from the other chapters. Many of the protections afforded to creditors in the other chapters are missing in chapter 9. The court in In re Richmond Sch. Dist., 133 B.R. 221, 225 (Bankr. N.D.Cal.1991), explained some of the unique aspects of a chapter 9 bankruptcy:
 
 
 33
 [Chapter 9 provides] a debtor with an array of bankruptcy powers to enable it to achieve financial rehabilitation with very few, if any, corresponding limitations and duties of the type to which a Chapter 11 debtor is subject. For example, a Chapter 9 debtor is not subject to the reporting and other general duties of a Chapter 11 debtor in possession under section 1107, and pursuant to section 904, may borrow and spend without court authority. Unlike any of the other chapters, Chapter 9 makes no provision for conversion of the case to another chapter or for an involuntary liquidation of any of the debtor's assets. At the same time, a Chapter 9 debtor enjoys a full expanse of bankruptcy powers, including the benefit of an enhanced automatic stay pursuant to sections 362(a) and 922(a), the right to avoid preferences, fraudulent conveyances and other transfers as provided in sections 544 through 549, the authority to borrow monies on the security of liens senior to existing liens of record pursuant to section 364(c), the right to reject executory contracts pursuant to section 365 and the ability to bind all creditors by a confirmed plan pursuant to section 944.
 
 
 34
 Id. (footnote omitted).
 
 
 35
 In 405 N. Bedford Dr. we pointed to several sections of the bankruptcy code as examples of the protections afforded creditors in chapter 11. 405 N. Bedford Dr., 778 F.2d at 1377-78 (pointing to 11 U.S.C. §§ 361, 362, 363(e), 363(f), 1104, 1121). Of those sections, only two are applicable in a chapter 9 case — sections 361 and 362. 11 U.S.C. § 901.[2]
 
 
 36
 The two sections to which the court points, that are applicable in chapter 9, act as protections for both debtors and creditors. Section 362 automatically stays judicial proceedings against the debtor and stays the enforcement of uncollected judgments. Id. at § 362(a). Under certain circumstances, however, creditors may be relieved, in whole or in part, from the automatic stay.[3] A creditor may be granted relief from a stay "for cause, including the lack of adequate protection of an interest in property." Id. at § 362(d)(1). A creditor may be granted relief from a stay if the property is not necessary to effectuate a plan of reorganization. Id. at § 362(d)(2). Section 361 allows the court to order the debtor, or its trustee, to make certain payments as compensation for losses accrued when adequate protections of secured interests do not fully compensate for losses. Id. at § 361.
 
 
 37
 When determining whether an order is final, in the context of objections to and motions to dismiss a bankruptcy, our cases are concerned with whether an order finally determines an issue in such a way that addressing the issue later would not serve to prevent a party from suffering irreparable injury. E.g. Rega Properties, 894 F.2d at 1138; 405 N. Bedford Dr., 778 F.2d at 1377; Mason, 709 F.2d at 1317-18. A court's denial of such a motion merely allows the municipality to proceed with the bankruptcy. We are not convinced that Congress's whole municipal bankruptcy statutory scheme is so skewed in favor of the municipality that the commencement of proceedings itself causes irreparable injury. To so hold would essentially say that a creditor's rights are determined before the bankruptcy process really begins. As discussed above, creditors do have less rights in a chapter 9 than in any other chapter but they still do have rights. Notably, they have the right, under 11 U.S.C. § 362(d), to be granted relief from the automatic stay against enforcement of judgments. As noted above, the denial of such relief is a final decision and is therefore immediately appealable to this court. American Mariner Indus., 734 F.2d at 429. Such relief is a more appropriate way in which to address Silver Sage's concerns. A motion for relief from an automatic stay allows a court to provide focused relief tailored to the special needs and circumstances regarding a particular creditor.
 
 
 38
 Other remedies also exist. A creditor can ask the district court to withdraw the reference to bankruptcy court. 11 U.S.C. § 157(d). Creditors may also ask the court to dismiss a case or suspend all proceedings if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). We also note that the denial of Silver Sage's initial objection to the bankruptcy does not resolve the issue of bad faith in such a way that the bankruptcy court may not later dismiss the petition. If it does appear, at some time, that the City is failing to act in good faith, the bankruptcy court may dismiss the petition altogether. We are confident that the bankruptcy judges of this Circuit would be more than willing to use such a remedy if it is warranted. The threat of such a remedy, itself, may encourage the City, and other chapter 9 debtors, to act in good faith.
 
 
 39
 Silver Sage's other arguments for why we should find the denial of a motion to dismiss for bad faith a "final order" are not convincing. Silver Sage argues that the situation here is analogous to In re Mason, 709 F.2d 1313, (9th Cir.1983). In Mason, we held that the denial of a motion to dismiss an involuntary chapter 7 petition was a final decision and therefore appealable as of right. Id. at 1316-18. We noted that in proceedings on involuntary cases, the bankruptcy rules of procedure contemplate procedures "much like [those in] any other lawsuit." Id. at 1317. The petition is treated like a complaint that must be answered by the debtor, discovery is available, a hearing may be held in which evidence is taken, the court must make findings of fact and conclusions of law and a judgement is entered. Id. The court also found that there was a great potential for substantial harm if an involuntary petition is erroneously allowed to go forward. Upon the approval of an involuntary petition, the court has the power to appoint a trustee and liquidate the debtor's assets to pay the creditors. Id. The approval of an involuntary petition finally determines the debtor's rights so that addressing the issue later would not serve to prevent the debtor from suffering irreparable injury. We therefore concluded that immediate appeal was necessary.
 
 
 40
 The Mason case is clearly distinguishable from the case here. As noted above, the procedures that must be followed before an order for relief is granted in an involuntary case are similar to the procedures that must be followed before relief is granted in any other lawsuit. The procedures to be followed before relief is granted in a chapter 9 case, however, cannot be similarly characterized. The rights of a debtor are extraordinarily affected when an order for relief is granted in an involuntary case. In an involuntary case, an unwilling debtor is haled into court and told to answer allegations by its creditors that their only effective relief is for the debtor to be put in bankruptcy. When the order is granted, the debtor essentially loses control of its assets. The court, or a trustee, takes control of the assets. 11 U.S.C. § 541. Without an immediate appeal, the order for relief would not be reviewable until almost all the damage is done. Here, the only "damage" the creditors suffer is having to participate in a bankruptcy process. Creditors, whether they be lenders or judgment creditors, are always subject to the risk that debtors will file for bankruptcy.[4]
 
 
 41
 Silver Sage also argues that without an immediate appeal, Congress's civil rights statutory scheme will be undermined. In an attempt to eliminate discrimination in housing, Congress passed the Fair Housing Act. In an attempt to allow cities to take advantage of the bankruptcy process to reorganize their debts, Congress passed Chapter 9 of the bankruptcy code. There is no evidence that Congress felt that the objectives of the former were more important than the latter. Silver Sage argues that the City's actions will have a chilling effect on civil rights litigation against cities. Bankruptcy has been available to cities since the 1930's.[5] Congress has restructured the bankruptcy act several times and has never sought to restrain cities from using bankruptcy as a tool to restructure debts incurred by civil rights judgments. Municipal bankruptcies are extremely rare when compared to the number of civil rights judgments levied against municipalities.[6] If, in the future, municipalities use chapter 9 as a way to flout Congress's will, we are confident that Congress would address the issue. We are also confident that the bankruptcy courts would dismiss chapter 9 petitions if it is clear that a municipality is abusing the process in such a manner.
 
 
 42
 Silver Sage vigorously argues that immediate appealability is necessary because this court's judgment would otherwise be flouted. Our judgments should not be flouted. The bankruptcy judges and district judges of this Circuit have no interest in seeing our judgments flouted. We believe that they would be more than able to recognize whether a party has brought a bankruptcy for the sole purpose of flouting our judgments. If it appears to the bankruptcy court that the City is, in fact, acting for the sole purpose of "flouting" our judgment, we are confident that the bankruptcy court would recognize this and sanction the City accordingly.
 
 
 43
 Finally, Silver Sage argues that Congress' will is threatened because it "uniquely required that cities prove that their bankruptcy filing is in good faith to receive the benefits of Chapter 9." Good faith, however, is a requirement of all bankruptcies and without it a bankruptcy is to be dismissed for "cause" under 11 U.S.C. § 1112(b). E.g., 405 N. Bedford Dr., 778 F.2d at 1377.
 
 
 44
 The denial of an objection to and a motion to dismiss a chapter 9 bankruptcy does not irreparably injure a party so that later addressing the issue would be futile. We therefore hold that such a denial is not a final decision and cannot be immediately appealed to this court.
 
 CONCLUSION
 
 45
 The bankruptcy court's denial of Silver Sage's motion to dismiss and objections to the bankruptcy petition was not a final decision. The BAP chose not to hear an interlocutory appeal from the denial of the motion. This exercise of discretion is not subject to our review. We therefore have no jurisdiction.
 
 
 46
 The appeal is DISMISSED.
 
 
 
 Notes:
 
 
 [1]
 We do not separately consider Silver Sages's argument that the collateral order doctrine applies. The same considerations which lead us to conclude that denying Silver Sage an immediate appeal causes no irreparable harm also lead us to conclude that the bankruptcy court's ruling is not "effectively unreviewable on appeal from a final judgement."Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1066 (9th Cir.2000).
 
 
 [2]
 Section 901 of the bankruptcy code lays out which sections of the bankruptcy code, applicable to other chapters, are applicable to chapter 9
 
 
 [3]
 The denial from relief from an automatic stay is a final decision subject to immediate appealIn re American Mariner Indus., 734 F.2d 426, 429 (9th Cir.1984), overruled on other grounds by United Sav. Assoc. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).
 
 
 [4]
 We do not decide whether a Chapter 9 order for relief issues automatically once the municipality files a voluntary petition, 11 U.S.C. § 301, or whether the court must first consider objections to the bankruptcy under 11 U.S.C. § 301(c) before entering the order for reliefCompare Collier on Bankruptcy, 15th ed. revised, § 921.04[5] with In re Colorado Centre Metropolitan Dist., 113 B.R. 25, 27 (1990). Regardless of when the order for relief is entered, we hold that chapter 9 supplies a creditor with adequate protections against irreparable harm to distinguish In re Mason, 709 F.2d 1313.
 
 
 [5]
 The first constitutionally valid municipal bankruptcy legislation was passed in 1937See generally COLLIER ON BANKRUPTCY, 15th ed. § 900.LH[3] (2001).
 
 
 [6]
 Less than 400 chapter 9 cases have been filed in the last 60 yearsSee NORTON BANKRUPTCY LAW AND PRACTICE 2d, § 136:25(2001). For this reason, Silver Sage's argument that not allowing an immediate appeal will adversely affect the municipal bond market is also meritless.