FILED

DEC 09 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-16-1116-FPaKi |
| | ) | |
| REYNALDO F. MARQUES, | ) | Bk. No.   8:12-bk-22571-MW |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| REYNALDO F. MARQUES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| JAMES J. JOSEPH, Trustee; | ) | |
| JPMORGAN CHASE BANK N.A., | ) | |
| | ) | |
| Appellees.[**] | ) | |
| _____ | ) | |

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed – December 9, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances:     Appellant Reynaldo F. Marques argued pro se; John
Sorich argued on behalf of Appellee JPMorgan Chase
Bank, N.A.

_____

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

[**] Appellee James J. Joseph did not file an answering brief
or otherwise make an appearance in this appeal.

Before: FARIS, PAPPAS,*** and KIRSCHER, Bankruptcy Judges.

## INTRODUCTION

Appellant and chapter 7[1] debtor Reynaldo F. Marques appeals from the bankruptcy court's order granting appellee JPMorgan Chase Bank, N.A. ("Chase") relief from the automatic stay. On appeal, he argues that the bankruptcy court erred by failing to determine Chase's standing to foreclose on his property before granting relief from the automatic stay. The record reflects that the bankruptcy court did consider Mr. Marques' arguments and properly determined that Chase had standing to seek relief from the automatic stay. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND[2]

**A.    The Promissory Note and the debtors' default**

On or about August 14, 2006, Mr. Marques and his wife, Anne C. Marques, executed an adjustable rate note (the "Promissory Note") in the principal amount of $727,000 in favor of Washington Mutual Bank, FA ("WaMu"). The Promissory Note was secured by a deed of trust on real property located in Dana Point, California (the "Property") that was executed by Mr. and Mrs. Marques and

---

*** The Honorable Jim D. Pappas, United States Bankruptcy Judge for the District of Idaho, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Mr. Marques presents us with a deficient record on appeal. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

recorded in Orange County. The Promissory Note was endorsed in blank and without recourse.

On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver of WaMu. In September 2008, Chase acquired certain assets and liabilities of WaMu from the FDIC, including the Promissory Note.

Mr. and Mrs. Marques ceased making payments on the Promissory Note in November 2008. In March 2009, Chase recorded a Notice of Default and Election to Sell Under Deed. Around the same time, it substituted Quality Loan Service Corporation as the new trustee under the deed of trust. When Mr. and Mrs. Marques failed to cure the default, notices of sale were recorded on June 29, 2009 and July 9, 2010.

On October 5, 2011, Mr. Marques unilaterally executed a fraudulent limited power of attorney whereby Chase purportedly appointed him as its attorney-in-fact. Mr. Marques, supposedly as an attorney-in-fact for Chase, next executed and recorded a fraudulent "substitution of trustee" that substituted Equitable Trustee Services Management Trust ("Equitable") as trustee in place of Quality Loan Service. Equitable executed and recorded a "Deed of Full Reconveyance" that purported to extinguish the deed of trust.

When Chase discovered the fraudulent filings, it proceeded to undo Mr. Marques' mischief. It recorded a rescission that stated that Chase did not appoint Mr. Marques as its attorney-in-fact, did not authorize the reconveyance, and did not authorize Equitable to act on its behalf.

As of March 2016, the amount due under the Promissory Note

3

totaled $1,146,499.85.  The fair market value of the Property was $892,500.

**B.    The bankruptcy cases**

In addition to the fraudulent filings, Mr. and Mrs. Marques initiated numerous bankruptcy cases.

Mrs. Marques filed a chapter 7 petition on January 20, 2012, which was dismissed for failure to appear at the § 341(a) meeting of creditors.

Mrs. Marques filed a second chapter 7 petition on May 2, 2012.  She received a discharge, and that case was closed on January 30, 2013.

Mr. Marques commenced the current case by filing a chapter 7 petition on October 30, 2012.  He received a discharge, and the case was closed on August 27, 2013.  He later moved to reopen the case; the court did so on December 4, 2013.

Mr. Marques filed a chapter 13 petition on November 15, 2013.  The court granted his motion to dismiss that case shortly thereafter.

While the present case was pending, Mr. Marques filed another chapter 13 petition on April 24, 2014.  Mr. Marques again voluntarily dismissed that case.

**C.    Chase's Motion for Relief from Stay and Mr. Marques' Standing Motion**

On December 1, 2015, Chase filed its motion seeking relief from the automatic stay ("Motion for Relief from Stay").  It argued that (1) Mr. Marques did not have any equity in the Property and the Property is not necessary to an effective reorganization; (2) Chase's interest in the Property was not

4

protected by sufficient equity; (3) the bankruptcy filing was a scheme to delay, hinder, or defraud creditors; and (4) in rem relief was warranted due to Mr. and Mrs. Marques' abuse of the bankruptcy process.

On January 21, 2016, Mr. Marques filed a motion ("OSC Motion") requesting that the bankruptcy court issue an order to show cause why Chase should not be compelled to prove its standing and produce the "wet-ink" Promissory Note. Chase responded that it would make the Promissory Note available for Mr. Marques' inspection prior to the hearing on the OSC Motion.

Meanwhile, Mr. Marques filed a document challenging Chase's standing to seek relief from the automatic stay ("Standing Motion"), which appeared to both oppose the Motion for Relief from Stay and move the court to determine the validity of the Promissory Note. Mr. Marques argued that Chase lacked standing to enforce the Promissory Note because it had not produced the original Promissory Note and could not prove a valid assignment or chain of title of the Promissory Note from WaMu and the FDIC. As such, he contended that the bankruptcy court lacked jurisdiction to decide the Motion for Relief from Stay.

On March 7, 2016, the bankruptcy court held a hearing on the OSC Motion. Chase produced the Promissory Note for inspection by the court and Mr. Marques. Following the hearing, the court said:

> At the hearing, Lender produced, and the Court and Debtor inspected, the Original Note. Debtor admitted in open court that the signatures on the Original Note are his signature and his spouse's signature. However, for reasons relating to previous transfers of the Original Note and other reasons stated on the record, Debtor maintained and argued that the Original Note is

5

no longer enforceable.

The court held that, because Mr. Marques had received the requested relief of inspecting the Promissory Note, the OSC Motion was moot. However, it invited Mr. Marques to submit any documentation in support of his position to the court prior to the hearing on the Standing Motion and the evidentiary hearing on the Motion for Relief from Stay.[3]

On March 28, 2016, the bankruptcy court held a hearing on Mr. Marques' Standing Motion and an evidentiary hearing on Chase's Motion for Relief from Stay.

Regarding the Standing Motion, Mr. Marques argued that Chase did not have the wet-ink Promissory Note (even though Chase had produced it for his inspection at the March 7 hearing) and that the assignment from WaMu/FDIC to Chase was invalid or unproven. The bankruptcy court denied the Standing Motion and adhered to its tentative ruling, wherein it recounted that Chase had produced the original copy of the Promissory Note at the hearing on the OSC Motion. It therefore found that Chase was in possession of the Promissory Note. Because the Promissory Note was endorsed in blank, it was a bearer instrument, and Chase, as the entity in possession of the Promissory Note, was therefore the "holder." As the holder, it "is entitled to enforce the promissory note and therefore has standing in this bankruptcy court to move for relief from the automatic stay."

---

[3] On March 17, 2016, Mr. Marques filed a Verified Jurisdictional Attack and Memorandum of Law Regarding Movant's Clear Lack of Standing as Established by Court Precedent. His arguments therein essentially repeated those raised in the Standing Motion.

In its order denying the Standing Motion ("Standing Order"), the bankruptcy court held that:

1. [Chase] is "holder" of the Promissory Note;

2. As "holder," [Chase] is entitled to enforce the Promissory Note;

3. [Chase] has standing in this bankruptcy court to move for relief from the automatic stay; and

4. Debtor's Motion for an Order Determining that [Chase] Lacks Standing is denied with prejudice.

Mr. Marques did not appeal from the Standing Order.

The bankruptcy court next held the evidentiary hearing on the Motion for Relief from Stay. Chase offered the testimony of a research officer at Chase, who testified that Chase had properly acquired assets of WaMu, including the Promissory Note. He also testified that Mr. Marques was not an attorney-in-fact for Chase and was not authorized to substitute a trustee under the deed of trust or reconvey the deed of trust to himself. Mr. Marques offered his own testimony, although it largely focused on the validity of the Promissory Note and its subsequent assignment.

At the conclusion of the evidentiary hearing, the court took the matter under advisement and issued a written memorandum decision granting the Motion for Relief from Stay on April 11, 2016. It held that (1) Chase established that Mr. Marques "lacks any equity in the Property by a wide margin[;]" (2) Chase "lacks adequate protection of its interest in the Property . . . based upon the monthly payments continuing to accrue and the gap between the Property's fair market value and the amount of Movant's claim[;]" and (3) Mr. Marques' petition was a part of a

7

scheme to hinder, delay, or defraud Chase.

In its order ("Relief from Stay Order"), the court stated that it granted the Motion for Relief from Stay and that the order shall be binding in any other bankruptcy case affecting the Property for a period of two years.

Mr. Marques timely filed his notice of appeal from the Relief from Stay Order. The notice of appeal did not include or otherwise reference the Standing Order.

**D.    The motion to dismiss**

While this appeal was pending, Chase filed a motion to dismiss, arguing that the Property had been sold at auction, rendering this appeal moot.

Chase represented that, on September 12, 2016, the Property was foreclosed upon and sold to Chase. On September 16, 2016, the trustee's deed upon sale was recorded in Orange County. Thus, Chase argued that this appeal is constitutionally moot.

In response, Mr. Marques repeated his arguments that the Promissory Note and deed of trust were void, such that Chase was without authority to proceed with the foreclosure sale.

The motions panel deferred the mootness issue for consideration concurrent with the merits of this appeal.

JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(G). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158.

ISSUES

(1) Whether this appeal is moot.

(2) Whether the bankruptcy court erred in granting Chase

8

relief from the automatic stay.

## STANDARDS OF REVIEW

We review for an abuse of discretion a bankruptcy court's order granting relief from the automatic stay. First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 868 (9th Cir. BAP 2012). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

We review de novo our own jurisdiction, including questions of mootness. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003).

## DISCUSSION

In his opening brief, Mr. Marques declares, "**Appellant withdraws his appeal**, but requests that this court, sua sponte, do its duty to review upon this instant and urgent request, the record of [the case below] . . . ." Despite "withdrawing" the appeal, Mr. Marques continues to prosecute the appeal.

Because Mr. Marques is proceeding pro se, we will assume that he did not mean to withdraw his appeal and will examine the merits of his appeal.

9

**A.   This appeal is not moot.**

Before reaching the merits of this appeal, we must first resolve Chase's motion to dismiss.  Although the Property has been sold at auction with no right of redemption, this appeal is not moot.

Mootness directly affects the Panel's ability to decide this appeal.  See Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014) ("We cannot exercise jurisdiction over a moot appeal.").  Chase argues that the appeal is constitutionally moot.  Regarding constitutional mootness, we have stated:

> Constitutional mootness derives from Article III of the United States Constitution, which provides that the exercise of judicial power depends on the existence of a case or controversy.  The doctrine of constitutional mootness is essentially a recognition of Article III's prohibition against federal courts' issuing advisory opinions.  While the Article III mootness doctrine has a "flexible character," it applies when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief.  If no effective relief is possible, we must dismiss for lack of jurisdiction.

United States v. Gould (In re Gould), 401 B.R. 415, 421 (9th Cir. BAP 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010) (internal citations omitted); see Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012) (Whether a case is constitutionally moot turns on whether the Panel may provide "the appellant any effective relief in the event that it decides the matter on the merits in his favor.").

In the present case, Mr. Marques did not seek a stay of the

10

foreclosure sale pending appeal.[4]  After he filed this appeal, Chase purchased the Property at auction, and there is no statutory right of redemption.  Chase thus contends that the sale is final and that this appeal is moot.

But the closing of the foreclosure sale to Chase does not prevent us from granting effective relief if we reverse the bankruptcy court.  Regarding the foreclosure and sale of real property, we have stated:

> The mootness doctrine applies when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief. . . . Here, although it may be difficult to restore the parties to the status quo ante, it is not impossible. There is nothing in the record that shows debtor's property was sold to a third party.  Theoretically, if we reversed, the trustee's sale would be void and title to the property would revert to debtor.  Although she is presently not in possession, she would again own the property and could move back in.  Accordingly, we could fashion effective relief, and the appeal is not moot. We therefore reach the merits of the orders on appeal.

Leafty v. Aussie Sonoran Capital, LLC (In re Leafty), 479 B.R. 545, 552 n.8 (9th Cir. BAP 2012).

As in Leafty, this appeal is not moot.  If the foreclosure sale is indeed void as alleged by Mr. Marques, we could fashion effective relief for him.  Chase indicated that it purchased the Property in September 2016, and it said at oral argument that it did not subsequently sell the Property to a third party.  We thus have the ability to undo the sale, if necessary.  See Focus Media, Inc. v. Nat'l Broadcasting Co. (In re Focus Media, Inc.),

---

[4] "We may take judicial notice of events in the bankruptcy case occurring subsequent to the filing of an appeal if they resolve the dispute between the parties."  In re Ellis, 523 B.R. at 676 (citing Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1087 (9th Cir. 2011)).

11

378 F.3d 916, 923 (9th Cir. 2004) (holding that "effective relief is available" where the court can fashion equitable relief); cf. Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald), 428 B.R. 872, 881-82 (9th Cir. BAP 2010) (a "sale to a third party is a classic example of mootness in the bankruptcy context because it precludes meaningful relief").

Chase has not shown that this appeal is moot. See Suter v. Goedert, 504 F.3d 982, 986 (9th Cir. 2007) ("In general, the party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide."). Accordingly, we will next consider the merits of this appeal.

**B. The bankruptcy court did not err in granting Chase relief from the automatic stay.**

**1. The bankruptcy court determined the validity of the Promissory Note prior to granting relief from stay.**

Mr. Marques' only argument in his opening brief is that the bankruptcy court lacked subject matter jurisdiction to hear Chase's Motion for Relief from Stay under Civil Rule 12(b)(1), because it did not first consider whether Chase had standing to foreclose on the Property. He argues that:

> [t]he lower court had a mandatory duty to address Appellant's challenge of Movant's standing, **prior to proceeding**, which it did not do. The lower court failed to address or acknowledge that the record of case No.: 8-12-22571-MW shows that Movant had failed to provide the chain of title, the putative assignment of the loan, and failed to bring forward the original note **prior** to filing its motion as required by Federal Rules of Evidence, Rule 1002 (Requirement of the Original).

He claims that "[t]he lower court in which jurisdiction was challenged lacked judicial discretion." He does not otherwise

12

substantively challenge the Relief from Stay Order.[5]

Mr. Marques is factually and legally mistaken. The bankruptcy court did consider Mr. Marques' challenges to Chase's standing. On February 29, 2016, Mr. Marques filed the Standing Motion, which asserted that the court did not have jurisdiction to decide the Motion for Relief from Stay because Chase lacked standing to foreclose. On March 7, 2016, in response to the OSC Motion, Chase produced the original, wet-ink note. Both the court and Mr. Marques had the opportunity to examine the Promissory Note. Mr. Marques admitted that the signatures belonged to him and his wife.

The court further held a hearing on the Standing Motion on March 28, 2016, but ultimately found no merit to Mr. Marques' arguments. In its Standing Order, the court said that it had considered the parties' arguments and the Promissory Note produced by Chase, and it concluded that Chase is the holder of the Promissory Note and is therefore entitled to enforce it. The court said that Chase had standing in the case to move for relief from the automatic stay and denied Mr. Marques' motion.

Having determined that Chase had standing to seek relief from the automatic stay, the bankruptcy court did not err in then deciding Chase's Motion for Relief from Stay.

---

[5] Mr. Marques also alleges in passing that "the lower court clearly denied Appellant his due process right to be heard," but does not expand upon this point. As such, we will not consider it. See Christian Legal Soc. Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 487 (9th Cir. 2010). In any event, the bankruptcy court allowed Mr. Marques to file multiple documents on the issue of standing and allowed him to argue orally at the hearing on the Standing Motion and Motion for Relief from Stay.

13

Mr. Marques also contends that Federal Rule of Evidence 1002 required Chase to offer the Promissory Note before filing the Motion for Relief from Stay. However, that rule only states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. It does not specify any timing for production, and, in any event, Chase did produce the original Promissory Note.

Accordingly, the court did not err when it granted Chase relief from the automatic stay.

**2. Mr. Marques fails to prove that the Promissory Note is defective.**

In his opening brief, Mr. Marques only contends that the bankruptcy court erred by allegedly failing to determine Chase's standing prior to granting relief from stay. However, at oral argument, Mr. Marques additionally argued that the court erred by determining that the Promissory Note was valid. Although we generally do not consider arguments not raised in the opening brief, in the spirit of construing pro se appellants' arguments liberally, we will address this issue. See Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 694 n.5 (9th Cir. BAP 2014).

Mr. Marques contends that Chase is not entitled to enforce the Promissory Note because an adjustable-rate note is non-negotiable and non-transferrable. Mr. Marques is wrong.

First, the Promissory Note itself contemplates that the Promissory Note may be transferred to a different creditor: "I understand that the Lender [WaMu] may transfer this Note. The

14

Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'."

Second, an adjustable-rate note can be negotiable under Article 3 of the Uniform Commercial Code ("UCC"). Section 3104 of the California Commercial Code states:

> (a) Except as provided in subdivisions (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following:
>
>> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
>>
>> (2) Is payable on demand or at a definite time.
>>
>> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Cal. Com. Code § 3104(a). The Promissory Note meets all of these requirements, insofar as it: (1) represents an unconditional promise; (2) pertains to a fixed amount of money; (3) was payable to order at the time it was issued; (4) was payable at a definite time; and (5) does not state any other undertakings or require any further action by Mr. Marques other than the payment of money.

The Promissory Note provides for a "fixed amount of money," even though it also provides for an adjustable interest rate. See Cal. Com. Code § 3104(a); see Cal. Com. Code § 3112(b)

15

("Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument."); Cal. Com. Code § 3112 cmt. 1 ("Under [UCC] Section 3-104(a) the requirement of a 'fixed amount' applies only to principal. The amount of interest payable is that described in the instrument. If the description of interest in the instrument does not allow for the amount of interest to be ascertained, interest is payable at the judgment rate. Hence, if an instrument calls for interest, the amount of interest will always be determinable. If a variable rate of interest is prescribed, the amount of interest is ascertainable by reference to the formula or index described or referred to in the instrument.")

Mr. Marques also contends that, even if Chase is the holder of the Promissory Note, it has not proved that it acquired the Promissory Note legally. But we have repeatedly held that a possessor of a note endorsed in blank is a party entitled to enforce the note and foreclose on any collateral. See Zulueta v. Bronitsky (In re Zulueta), BAP No. NC-10-1459-HPaJu, 2011 WL 4485621, at *6 (9th Cir. BAP Aug. 23, 2011), aff'd, 520 F. App'x 558 (9th Cir. 2013) ("A party in physical possession of an endorsed-in-blank note qualifies as a holder of a note under [California law]. Because [the servicer] appeared at the Hearing with possession of the endorsed-in-blank Note, it was a holder of the Note entitled to enforce it."); see also Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 902, 910-11

16

(9th Cir. 2011); <u>Allen v. U.S. Bank, N.A. (In re Allen)</u>, 472 B.R. 559, 565-67 (9th Cir. BAP 2012).

There is no requirement that the holder of a note endorsed in blank must additionally prove that it properly came into possession of the note. In fact, the UCC makes clear that the holder of a note includes anyone in possession of a note, even if he came by it involuntarily or wrongfully:

> Negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent. But in some cases the transfer of possession is involuntary and in some cases the person transferring possession is not a holder. . . . [N]egotiation can occur by an involuntary transfer of possession. For example, **if an instrument is payable to bearer and it is stolen by Thief or is found by Finder, Thief or Finder becomes the holder of the instrument when possession is obtained. In this case there is an involuntary transfer of possession that results in negotiation to Thief or Finder.**

Cal. Com. Code § 3201 cmt. 1 (emphasis added). Thus, Mr. Marques is patently incorrect that Chase, as the holder of the Promissory Note, must prove an unbroken chain of custody as a prerequisite to enforcing the Promissory Note.

**CONCLUSION**

For the reasons set forth above, this appeal is not moot. Additionally, the bankruptcy court did not err in granting Chase relief from the automatic stay. Therefore, we AFFIRM.

17