

FILED

OCT 20 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
DA & AR HOSPICE CARE, INC.,
      Debtor.

BAP No. CC-22-1128-FLC

Bk. No. 2:21-bk-19219-ER

MICHAEL EUGENE REZNICK,
      Appellant,

v.

UST- UNITED STATES TRUSTEE, LOS
ANGELES; YVETTE HARGROVE-
BROWN; DA & AR HOSPICE CARE,
INC.,

      Appellees.

**MEMORANDUM**[*]

Appeal from the United States Bankruptcy Court
for the Central District of California
Ernest M. Robles, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Attorney Michael Eugene Reznick filed a chapter 11[1] petition on

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

behalf of DA & AR Hospice Care, Inc. (the "Hospice"). The bankruptcy court found that Mr. Reznick was not retained by the Hospice, did not have authority to act on behalf of the Hospice, and knew that he had no basis to file the petition. It referred him to a disciplinary panel for fraud on the court and violation of Rule 9011. Mr. Reznick appeals, maintaining that the Hospice's medical director authorized him to initiate the bankruptcy case.

All of Mr. Reznick's arguments are meritless, and many of them have nothing to do with the matter on appeal. We AFFIRM.

**FACTS**[2]

## A.    Prepetition events

The bankruptcy petition was preceded by a murky dispute over ownership and control of the Hospice and its affiliated businesses.

Ailene Rivera was an officer and sat on the boards of directors of the Hospice and its affiliated company, NobleQuest Health Foundation, Inc. ("NobleQuest"). Mr. Reznick was NobleQuest's attorney. In September 2021, on Mr. Reznick's recommendation, Ms. Rivera was placed on administrative leave and referred to a special litigation committee for investigation into allegations of wrongdoing.

In October 2021, the Hospice and others (represented by Mr. Reznick) sued Ms. Rivera for fraud and embezzlement in the Los Angeles superior

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

court. The complaint alleged that Dr. Jose De La Llana was the CEO, medical director, and controlling shareholder of the Hospice and other associated companies. But the complaint also contained a contradictory allegation that Dr. Daniel Rose's trust owned and controlled the Hospice.

In early December 2021, Mr. Reznick filed a chapter 11 petition on behalf of NobleQuest. The bankruptcy case was dismissed later that month for the debtor's failure to file schedules and other documents.

## B. The Hospice's bankruptcy case

### 1. The chapter 11 petition

In mid-December 2021, the Hospice filed a skeletal bankruptcy petition under chapter 11 subchapter V. Mr. Reznick signed the petition as the Hospice's attorney. Dr. Yvette Hargrove-Brown signed the petition on behalf of the Hospice, purportedly as its president.

The petition contained a list of creditors but otherwise did not include schedules or any other required documents. The bankruptcy court issued a deficiency notice ordering the Hospice to file the missing documents within fourteen days.

The Hospice did not file the required schedules and documents by the deadline. The bankruptcy court ordered the Hospice to file the missing documents by January 19, 2022 or face dismissal.

### 2. The § 341(a) meeting of creditors

Prior to the deadline, Mr. Reznick and Dr. Hargrove-Brown appeared at the § 341(a) meeting of creditors on behalf of the Hospice. The meeting

did not go well.

Mr. Reznick admitted that he did not file a list of related cases, including the bankruptcy case he filed for NobleQuest. He acknowledged that he did not submit information required by the U.S. Trustee but explained that "there's nothing to – nothing meaningful I should say to provide other than we have no clue."

Dr. Hargrove-Brown stated that she was recently appointed as the CEO/president of both the Hospice and NobleQuest. But she could not answer basic questions about the Hospice, such as the number of board members or their names, whether the Hospice operated an in-patient facility or provided in-home care, the number of its employees and patients, the nature and amount of the Hospice's creditors' claims, or the Hospice's monthly income or expenses, business licenses, cash flow, assets, or liabilities. She even admitted that she did not know the actual location of the Hospice and had never been into the Hospice's facilities. She said that Dr. Rose owned the Hospice but neither she nor Mr. Reznick could confirm that fact or his ownership percentage. Neither Dr. Hargrove-Brown nor Mr. Reznick could confirm whether the Hospice was insolvent.

**3.    Dismissal for failure to file schedule and other documents**

The Hospice did not comply with the bankruptcy court's order to file schedules and other missing documents by the January 19 deadline. On January 25, the bankruptcy court dismissed the chapter 11 case. No one appealed that order.

## C. The U.S. Trustee's application for an order to show cause

The U.S. Trustee then filed an application for issuance of an order to show cause ("OSC Application") directing Mr. Reznick and Dr. Hargrove-Brown to explain (1) why the bankruptcy petition was not filed in bad faith; (2) why Mr. Reznick should not be required to disgorge all fees; (3) why Mr. Reznick should not be referred to the bankruptcy court disciplinary panel for filing a fraudulent bankruptcy case; and (4) why Dr. Hargrove-Brown should not be ordered to pay the subchapter V trustee's fees and barred from future bankruptcy filings.

The U.S. Trustee based the OSC Application on three points. First, the U.S. Trustee noted that the Hospice, Dr. Hargrove-Brown, and Mr. Reznick were involved in a total of at least six other bankruptcy cases filed in late 2021 by medical businesses, including the recent NobleQuest filing, all of which were unsuccessful.

Second, the U.S. Trustee described the inability of Dr. Hargrove-Brown and Mr. Reznick to provide basic facts at the meeting of creditors and their failure to provide the U.S. Trustee with the requested information and documents.

Third, the U.S. Trustee said that, shortly after Mr. Reznick filed the Hospice's petition, Ms. Rivera contacted the U.S. Trustee and alleged that the bankruptcy case was filed in bad faith and without authorization. Ms. Rivera provided the Hospice's business records and corporate documents and a declaration signed under penalty of perjury.

In her declaration, Ms. Rivera asserted that she was the president of the Hospice and owned fifty percent of its stock; Rosalie Manuel and Paul Laurel owned the remaining fifty percent. She said that the Hospice and its related entities were the targets of takeovers by certain individuals, including Mr. Reznick, Dr. De La Llana, Miteshkumar Patel, Carlos Escobar, and Daniel Callahan. She claimed that they used false corporate filings to remove her as officer of the companies. Ms. Rivera declared that, in December 2021, Dr. Hargrove-Brown appeared at the companies' offices claiming to be new management, but she was not an officer or employee of the Hospice and had no authority to file the bankruptcy petition.

The U.S. Trustee argued that the court should require Mr. Reznick to show cause why he should not be referred to the disciplinary panel pursuant to Local Bankruptcy Rule 2090-2(b) for initiating fraudulent bankruptcy cases. He also cited Rule 9011 as a basis to impose sanctions. Finally, the U.S. Trustee urged the court to require Dr. Hargrove-Brown to show cause why she should not pay the case trustee's fees and be barred from future bankruptcy filings.

The bankruptcy court granted the OSC Application and issued the order to show cause ("OSC").

## D.    The OSC proceedings

### 1.    Mr. Reznick's and Dr. Hargrove-Brown's responses

In response to the OSC, Mr. Reznick filed a declaration in which he asserted that the U.S. Trustee had been "duped" by Ms. Rivera, a "criminal

6

mastermind." He asserted that, as a physical therapist, Ms. Rivera could not own, control, or operate a medical corporation. Rather, he maintained that Dr. De La Llana owned the Hospice and was its medical director.

Mr. Reznick stated that Ms. Rivera and others had engaged in an embezzlement scheme against NobleQuest, the Hospice, and an affiliated company called Care Plus, Inc. He said that he filed the superior court complaint against Ms. Rivera, and JPMorgan Chase Bank froze the Hospice's bank accounts; as a result, the Hospice had to file for bankruptcy protection.

Mr. Reznick maintained that the Hospice was insolvent on the petition date and that he did not act fraudulently or in bad faith. He claimed that he told the U.S. Trustee that he intended to file an amended petition and schedules. He said that the U.S. Trustee ignored his requests to reschedule the § 341(a) meeting, evidencing bad faith by the U.S. Trustee.

Mr. Reznick attached the following documents in support of his declaration: (1) California Secretary of State filings showing that Dr. De La Llana was the CEO, secretary, CFO, director, agent, and medical director of the Hospice; (2) NobleQuest board minutes from September 2, 2021 noting his allegation of Ms. Rivera's misappropriation of funds; (3) an October 15, 2021 retainer letter from Mr. Reznick to Dr. De La Llana concerning the scope of Mr. Reznick's representation of NobleQuest; (4) the superior court complaint against Ms. Rivera; and (5) an e-mail transmitting the superior court complaint to the U.S. Trustee.

7

Dr. Hargrove-Brown, represented by counsel, stated in her declaration that she was "Global Administrator" for Clinica Medica General Medical Center, Inc. ("CMG"). She said that, in September 2021, she joined the board of directors for NobleQuest and was appointed CEO.

She stated that Mr. Reznick contacted her in early December 2021 to file a bankruptcy petition on behalf of NobleQuest (which was in the process of merging with CMG). Later that month, he had her sign another bankruptcy petition on behalf of the Hospice.

### 2. Responses to the declarations

The U.S. Trustee responded to Mr. Reznick's and Dr. Hargrove-Brown's declarations. He contended that neither respondent presented any evidence showing that the bankruptcy petition was filed in good faith. He pointed out that the scant information provided in the petition was unsupported and did not appear to be truthful. Furthermore, he argued that Mr. Reznick represented two of the Hospice's creditors, which created a conflict of interest.

The Hospice (no longer represented by Mr. Reznick) argued that Mr. Reznick and Dr. Hargrove-Brown "neither owned nor had any authority" to file the petition and that "[t]he fraudulent filing was an ill-conceived hostile takeover attempt of the Hospice by Respondents."[3]

---

[3] The Hospice stated that it was incorporated in California in 2014 by Lusine Harutyunyian. Ms. Harutyunyian initially owned 100% of the Hospice, but in 2017 she transferred her interest to four individuals with a 25% share each. In 2020, two of those individuals sold their shares to Ms. Rivera, such that Ms. Rivera owns 50%.

### 3. Further responses

Dr. Hargrove-Brown then changed her tune. In a supplemental declaration and exhibits that she filed pro se, she said that, based on the documents filed by the U.S. Trustee, she believed that "my understanding of what may have transpired is different than what I was led to believe."

Dr. Hargrove-Brown said that she was told that the NobleQuest board had elected her its new CEO as a part of CMG's merger with NobleQuest and its affiliated companies. She was led to believe that Dr. Rose owned the Hospice. When she signed the Hospice's bankruptcy petition, she believed that she was its president and was authorized to do so. She later learned that there was a dispute over NobleQuest's ownership and that "Mr. Reznick did not have the information he indicated that he did in the Retainer Agreement." She stated that she never had a chance to review her first declaration before it was filed. She concluded that, "[a]t this point, I am not sure who or what to believe."

Dr. Hargrove-Brown attached exhibits to support her statements. Among the exhibits was a lengthy April 2022 e-mail from Mr. Reznick to Mr. Patel and others, in which Mr. Reznick admitted that he did not have information about basic facts related to the Hospice. He stated:

> Everything I am doing right now is tied in some way to the Bankruptcy OSC involving [the Hospice], a company I have been told **but have been unable to prove** is apparently related in some way to NobleQuest, the nonprofit I do represent . . . [,] and Care Plus, Inc. a company that I was informed in October

9

2021 was owned or controlled by Jose De La Lallana [sic] . . . .

I was subsequently informed by Daniel Callahan . . . that Daniel Rose, M.D., or one of his many related entities . . . now owns or controls the Debtor, **but I have never confirmed this.**

I have also asked repeatedly from [Mr. Callahan] and alleged members of "new" management, including Hargrove-Brown . . . to provide me with any documentation whatsoever that proves the legitimacy of your or our team's management and control of any of these entities.

Please be advised that beyond the [special litigation committee notice] that I prepared nearly a year ago, **I have nothing to disprove that Ailene Rivera is not in fact the legitimate owner of these medical practices** but for the fact that she is not a licensed California physicianbed [sic] by [Dr. De La Llana]. **I asked for anything** from [Mr. Callahan], Kelli [Williams], or anyone else connected with the underlying matters **to find something to show legitimacy**.

The United States Department of Justice and US Trustee are accusing me of filing a fraudulent bankruptcy petition and **I have no documentation to prove otherwise** . . . .

Frankly, **the answer I have been given by Hargrove Brown, [Mr. Callahan] and Kelli Williams, namely, that "Ailene Rivera took all the corporate records we have and we don't have a single document" doesn't pass the smell test**.

Needless to say, I cannot fight this battle on my own but if need be I will. Of course, that will make me adverse to you and Hargrove Brown and everyone else in **this sh\*t storm of a case.** I trust that nobody wants that to happen and perhaps we can get some cooperation with your help before the deadlines.

. . .

Please be further advised that **without some genuine showing of legitimacy in my opposition, as opposed to the bullsh\*t I have received in the past**, the OSC will likely be granted and I will need to appear before the disciplinary committee to justify what I did . . . . In the meantime, the California and likely New York and Illinois Bars will suspend my law licenses pending the committee's investigation and report. I will be out of business.

Regrettably **all of my requests for information concerning the companies – since October 2021 – have thus far fallen on deaf ears, with the same lame refrain**, that nobody has a single document because Ailene Rivera embezzled everything.

**More importantly I do not know who is running the show right now** to get the kind of answers I need before filing anything else concerning the companies that you and [Mr. Callahan] are connected with that are also connected with the OSC. **I don't know who if anyone is telling the truth out there** and don't understand why we need to play "hide the ball"? . . .

. . .

In summary, the bottom line is that **I cannot go into court with the scant evidence we now have against Ailene Rivera**. We will be laughed out of court and it will be binding on us for any future proceeding, including the pending OSC in the [Hospice bankruptcy case].

**We will need to explain what happened with Ailene without any further bullsh\*t. We need to deal with the facts we have, even the bad facts. I can fix or spin what I know, but**

11

**not what is concealed from me. Right now all I have is thin air** and I need help from everyone because Ailene looks to me and the judge and Department of Justice and Chase [Bank] like the one who is wearing the "white hat," while we all look like common criminals.

(Emphases and asterisks added.)

### 4.    The memorandum decision and order

After a hearing, the bankruptcy court issued its memorandum decision finding that Mr. Reznick committed fraud on the court and referring him to the bankruptcy court disciplinary panel.

The bankruptcy court found that, "[a]t the time Reznick filed the petition, he did not have an objectively reasonable basis for concluding that Hargrove-Brown, as opposed to Rivera, was the authorized representative of the Hospice." It considered Dr. Hargrove-Brown's declaration and extensively referenced the e-mail in which Mr. Reznick

> acknowledges that he lacked any information to substantiate his allegation that Rivera was not the legitimate owner of the Hospice; that he had conducted no due diligence to confirm the claim . . . that Rose, as opposed to Rivera, owned the Hospice; that he had no documentation to demonstrate that the instant bankruptcy filing was not fraudulent; and that he feared that the filing of the petition could ultimately lead to the suspension of his law license.

It similarly found that he "lacked any objectively reasonable basis to conclude that he was authorized to [file the petition]. In an attempt to distract attention from his own wrongful conduct, Reznick's response to

12

the OSC consists not of concrete evidence but rather further uncorroborated allegations against Rivera."

The bankruptcy court found that, on the petition date, Ms. Rivera was the president of the Hospice and a 50% shareholder. It found that she and the other officers did not authorize Mr. Reznick to represent the Hospice or file the bankruptcy petition. It noted that Mr. Reznick never produced an executed retainer agreement showing that he was authorized to represent the Hospice.

The bankruptcy court concluded that, "[b]y signing the petition on behalf of the Hospice, Reznick was representing to the Court that he had authority to cause the Hospice to seek bankruptcy protection. That representation constituted a fraud on the court" and violated Rule 9011. Accordingly, his conduct was "sufficiently serious" to warrant referral to the bankruptcy court's disciplinary panel. It declined to order Mr. Reznick to disgorge his fees, because he did not receive any fees for representing the Hospice. Additionally, the bankruptcy court imposed prefiling restrictions on Dr. Hargrove-Brown.

The bankruptcy court entered its order ("OSC Order") that recommended that Mr. Reznick's privilege to practice in the bankruptcy court in the Central District of California be revoked for at least three years. It further recommended that he only be allowed to apply for reinstatement once he fulfilled certain requirements.

Mr. Reznick timely appealed the OSC Order. Dr. Hargrove-Brown

13

did not appeal the ruling.[4]

**E.    The disciplinary panel proceedings**

Later, a three-judge disciplinary panel issued its memorandum decision and agreed with the bankruptcy court that Mr. Reznick had committed fraud upon the bankruptcy court and had violated Rule 9011. It determined that the bankruptcy court's recommendation for discipline was appropriate and adopted it in full. Mr. Reznick did not appeal the disciplinary panel's order, and it is final.

In May 2023, the United States District Court for the Central District of California also conducted a reciprocal disciplinary review and issued a similar suspension for three years.[5]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). Subject to our discussion below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred when it (1) found that Mr. Reznick had committed fraud on the court and violated Rule 9011 and

---

[4] After briefing was completed, Mr. Reznick's law firm, Law Offices of Michael E. Reznick, sought permission to file an amicus brief in this appeal. The motions panel saw no reason to allow Mr. Reznick a second bite at the apple and denied the motion. We do not consider any of the arguments raised therein.

[5] Mr. Reznick included in his excepts of record his response to the district court's order to show cause. As discussed below, we will not consider any of this new evidence that was not before the bankruptcy court in the first instance.

(2) referred the matter to the bankruptcy court's disciplinary panel.

## STANDARDS OF REVIEW

We review for an abuse of discretion the bankruptcy court's imposition of sanctions, including referral to a disciplinary panel, under both Rule 9011 and under its inherent sanctioning authority. *See Cuevas v. Chandler (In re Cuevas)*, BAP Nos. CC-15-1032-KuKiTa, CC-15-1353-KuKiTa, 2016 WL 5845670, at *3 (9th Cir. BAP Oct. 5, 2016); *see also Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 898 (9th Cir. BAP 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

"We review our own jurisdiction de novo. Whether a bankruptcy court's decision is final, under 28 U.S.C. § 158(d)[,] is a question of law reviewed de novo." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003) (citations omitted). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

15

## DISCUSSION

### A.     This Panel has jurisdiction to decide this appeal.

The U.S. Trustee argues that the bankruptcy court's OSC Order was not a final order and that this appeal is moot. While we agree in part with the U.S. Trustee, we hold that we have jurisdiction over this appeal.

### 1.     The OSC Order is a final, appealable order.

The Trustee argues that the OSC Order only referred Mr. Reznick for "possible discipline," so it was not a final, appealable order. However, he also admits that the OSC Order "might be final nonetheless because the bankruptcy court made a finding of specific misconduct."

The Ninth Circuit has adopted "a pragmatic or flexible approach to finality in bankruptcy cases. . . . The test for finality in bankruptcy typically asks two questions: (1) whether the bankruptcy court's order fully and finally determined the discrete issue or issues it addressed; and (2) whether it resolves and seriously affects substantive rights." *Jue v. Liu (In re Liu)*, 611 B.R. 864, 870 (9th Cir. BAP 2020) (cleaned up).

The bankruptcy court's OSC Order is final, in that it fully addressed the issues raised by the OSC (i.e., Mr. Reznick's alleged misconduct), left nothing more for the bankruptcy court to do, and seriously affected Mr. Reznick's substantive rights. Although the final determination of the appropriate punishment was left to the disciplinary panel, that separate proceeding did not affect the finality of the bankruptcy court's OSC Order.

Alternatively, even if the OSC Order was not final, we would exercise

16

our discretion to hear the appeal. 28 U.S.C. § 158(a), (b)(1); *In re City of Desert Hot Springs*, 339 F.3d at 787 ("It is within the discretion of the district court and the BAP . . . to hear interlocutory appeals.").

## 2.    This appeal is not moot.

The U.S. Trustee contends that this appeal is moot, because there is no longer a live controversy: the bankruptcy court did not impose any sanction and merely referred Mr. Reznick to the disciplinary panel; conversely, the disciplinary panel imposed the sanction, and Mr. Reznick did not appeal. Although the U.S. Trustee is correct that Mr. Reznick's appeal of the suspension is not properly before us, we disagree that we could not grant him any effective relief.

"We cannot exercise jurisdiction over a moot appeal." *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014). "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005) (cleaned up).

Mr. Reznick is confused about which court ordered his three-year suspension. He asks that we "vacate the bankruptcy court's June 27, 2022 order suspending him from practicing in the bankruptcy court for a period of three years." He later changes tack, arguing instead that the disciplinary panel's ruling was "ancillary" to the bankruptcy court's ruling and that a reversal of the OSC Order would necessarily undo the disciplinary panel's

17

ruling.

The U.S. Trustee is correct that we cannot overturn the three-year suspension. However, the bankruptcy court also found that Mr. Reznick committed fraud on the court. If we were to reverse the bankruptcy court's decision, the suspension would stand, but the court's fraud finding would not. The existence of that finding might affect Mr. Reznick, including his bar licenses or malpractice insurance. *See Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 442 (1984) ("But as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). Thus, we could grant him some effective relief, even though it is not the primary relief he seeks.[6]

Therefore, we have jurisdiction to decide this appeal.

## B. The bankruptcy court did not err in referring Mr. Reznick to the disciplinary panel for committing fraud on the court.

Mr. Reznick focuses his appeal on largely irrelevant arguments attacking Ms. Rivera's purported ownership of the Hospice. He also tries to raise new facts and arguments on appeal that he claims (incorrectly) that he could not raise in the bankruptcy court. We are not persuaded by any of these arguments.

---

[6] Because the disciplinary panel also determined that Mr. Reznick committed fraud on the court and we cannot disturb the disciplinary panel's order, a decision overturning the fraud finding in the bankruptcy court might have no appreciable effect. But there is still at least a possibility that a reversal of the bankruptcy court's decision might grant Mr. Reznick some relief.

### 1. The bankruptcy court's finding of fraud on the court is adequately supported by the record.

The bankruptcy court determined that Mr. Reznick committed fraud on the court when he filed the bankruptcy petition on behalf of the Hospice and continued to advocate for the petition's viability. When considering fraud on the court, we must determine "whether it harmed the integrity of the judicial process. Fraud on the court must be an intentional, material misrepresentation. Thus, fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1167-68 (9th Cir. 2017) (cleaned up); *see also Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) ("[A] court certainly may assess sanctions against counsel who willfully abuse judicial processes." (cleaned up)).

Mr. Reznick completely ignores the bankruptcy court's finding that he knew that he did not have authority to file the bankruptcy petition. As the bankruptcy court noted, Mr. Reznick admitted in the April 4, 2022 e-mail that he could not prove the ownership of the Hospice or disprove Ms. Rivera's ownership claims. He characterized the information he had been given as "bullsh*t" that "did not pass the smell test." He begged Mr. Patel and others for proof of corporate "legitimacy" and noted that his previous requests had gone unanswered. The bankruptcy court also found that Mr. Reznick could not produce a signed retainer agreement. In addition, we note that Mr. Reznick never offered a declaration from Dr. De

19

La Llana, the person who supposedly authorized the bankruptcy filing.

Based on Mr. Reznick's own admissions, the bankruptcy court did not err when it found that he had no objectively reasonable basis to conclude on the petition date that Dr. Hargrove-Brown was authorized to sign the petition. The bankruptcy court rejected Mr. Reznick's efforts to deflect from these issues by pointing to alleged wrongdoing by Ms. Rivera and her "cronies."[7]

At oral argument, Mr. Reznick attempted to explain away his April 2022 e-mail by arguing that, when he signed the petition in December 2021, he believed in good faith that Dr. De La Llana owned the Hospice and could unilaterally authorize the bankruptcy petition, and he did not realize until later that his belief might not have been true. But the e-mail contradicts his argument: he wrote that he had been asking for information about the Hospice since October 2021, two months before the petition date, and that "all of my requests for information concerning the companies – since October 2021 – have thus far fallen on deaf ears . . . ." His claim of innocence on the petition date is a recent fabrication.

---

[7] At oral argument, Mr. Reznick insisted that he had presented the bankruptcy court with evidence that Dr. De La Llana owned the Hospice and could unilaterally authorize the bankruptcy petition. Mr. Reznick repeatedly referenced the California Secretary of State filing that he had attached as an exhibit to his declaration. However, even if ownership was determinative, that document does not identify any owner of the Hospice. More importantly, Mr. Reznick admitted in his April 2022 e-mail that he did not have any proof of ownership and control of the Hospice and had not received any corroborating information from Dr. De La Llana, Dr. Rose, and others.

The record abundantly supports the bankruptcy court's findings. Thus, it did not abuse its discretion when it determined that Mr. Reznick had committed fraud on the court and made false representations.

**2.     Ms. Rivera's ownership interest in the Hospice is irrelevant.**

Mr. Reznick primarily argues that the bankruptcy court erred in finding that Ms. Rivera owned fifty percent of the Hospice. He contends that a physical therapist such as Ms. Rivera cannot lawfully own shares in a California professional medical corporation.

As far as we can tell, there is no dispute that Ms. Rivera is a physical therapist who cannot own a majority ownership interest in a California professional corporation. There is no evidence, however, that the Hospice was formed as a professional corporation, as opposed to a simple corporation. Further, Mr. Reznick offers no authority for the proposition that only a "professional medical corporation" can conduct the business of the Hospice.

But we need not definitively answer these questions, because Ms. Rivera's purported ownership of the Hospice is irrelevant for the purposes of appeal. We need only decide whether Mr. Reznick had authority to file the bankruptcy petition on behalf of the Hospice. Even if Ms. Rivera could not or did not own the Hospice, it does not necessarily follow that Mr. Reznick had authority to file the bankruptcy petition.

Mr. Reznick claims that Dr. De La Llana had authority, as "medical director" of the Hospice, to file the petition. State law governs whether a

corporation has authorized the filing of a bankruptcy petition. *See Price v. Gurney*, 324 U.S. 100, 106 (1945). In California, a corporation generally acts through its board of directors. *See* Cal. Corp. Code § 300(a). Mr. Reznick has not established that a "medical director" can unilaterally decide to file for bankruptcy on behalf of a corporation.

3.      **We do not consider Mr. Reznick's new arguments and evidence on appeal.**

Mr. Reznick raises a host of new arguments and facts on appeal. He contends that the attorney-client privilege and attorney-work product privilege barred him from offering this evidence to the bankruptcy court. This argument is patently frivolous, and we will not consider his new evidence.

For the first time, Mr. Reznick claims that he had a face-to-face meeting with Dr. De La Llana in late October 2021 at which Dr. De La Llana "in fact expressly 'authorized' him to represent the Hospice." He says that, at this meeting, he provided Dr. De La Llana with a retainer agreement to expand his scope of legal services,[8] and Dr. De La Llana provided him with a retainer check and proof that he was an officer and medical director of the Hospice. Mr. Reznick also refers to events that occurred after he filed his notice of appeal.

---

[8] The retainer agreement letter was offered in the bankruptcy court. It only proposes to expand the scope of Mr. Reznick's legal services to NobleQuest. It does not mention the Hospice in any way, much less evidence the Hospice's retention of Mr. Reznick.

Mr. Reznick admits he did not raise these allegations and evidence in the bankruptcy court, and therefore we will not consider them on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (we do not consider arguments and allegations raised for the first time on appeal). We may consider new arguments when: "(1) there are exceptional circumstances why the issue was not raised in the trial court; (2) the new issue arises while the appeal is pending because of a change in the law; or (3) the issue presented is a pure question of law and the opposing party will suffer no prejudice . . . ." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841-42 (9th Cir.), *cert. denied*, 142 S. Ct. 402 (2021). "The court will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (cleaned up).

We discern no manifest injustice here. Mr. Reznick claims on appeal that he could not reveal this information because he was prevented from doing so by the attorney-client privilege and attorney work product privilege. Yet, contradictorily, he asserts that he is free to break the privilege because there is no longer a risk of harm to his client after the superior court dismissed a lawsuit by Care Plus, Inc. against him.

Mr. Reznick's position is untenable. He never raised the privilege defense in the bankruptcy court, so he has waived that argument. *See Padgett*, 587 F.3d at 985 n.2. Furthermore, his explanation as to why he is now free to disclose the allegedly privileged information lacks any credibility. Assuming the privileges applied, he may not disregard the

23

privileges merely because he unilaterally determines that he and the client will not personally face any adverse consequences. Finally, he has made no showing that any of the basic information that was relevant to the OSC – that he was retained by the Hospice and that he had been authorized to file the bankruptcy petition – would have been subject to any privilege.

Thus, we will not consider any of Mr. Reznick's new arguments or evidence in the first instance on appeal.[9]

**4. Mr. Reznick's remaining arguments are meritless.**

Mr. Reznick contends that the bankruptcy court erred in accepting the U.S. Trustee's argument that he had filed multiple other fraudulent bankruptcy petitions. He claims that those cases were filed by a different attorney and that he was unaware of any other related bankruptcy case.

Mr. Reznick is misguided. First, the bankruptcy court did not attribute the many filings to him. Rather, it noted that Dr. Hargrove-Brown had been involved in seven bankruptcy cases and that Mr. Reznick had been counsel on two of those cases. It is patently false for Mr. Reznick to claim that the bankruptcy court attributed all of those filings to him.

Second, as the U.S. Trustee pointed out, Mr. Reznick filed the Hospice's bankruptcy petition shortly after NobleQuest's petition was dismissed for failure to file documents. He knew that NobleQuest was

---

[9] Even if we did consider the new allegations, we would reach the same conclusion; the new information and exhibits do not convince us that the bankruptcy court erred.

"definitely" a related entity and admitted as much at the meeting of creditors. Therefore, his continued insistence that it was proper for him not to disclose any related cases is plainly wrong.

**C.      The bankruptcy court did not err in referring Mr. Reznick to the disciplinary panel for violating Rule 9011.**

Finally, we note that Mr. Reznick does not directly address the bankruptcy court's ruling that he violated Rule 9011. He has waived any objection to this ruling and, in any event, we discern no error.

Rule 9011(b) provides (in summary) that when an attorney presents a bankruptcy petition, the attorney is certifying that the attorney has conducted a reasonable inquiry and that the petition is not being presented for any improper purpose and has a sufficient basis in fact and law. An attorney who presents a petition without proper authorization by the debtor violates this rule. *See, e.g.*, *Winterton v. Humitech of N. Cal., LLC (In re Blue Pine Grp., Inc.)*, 457 B.R. 64, 77 (9th Cir. BAP 2011) (affirming the bankruptcy court's ruling that the attorney violated Rule 9011 when he proceeded with a frivolous bankruptcy case and "failed to undertake an objectively reasonable inquiry into the facts and law supporting the bankruptcy petition, relying instead on information others told him."), *aff'd in part, vacated in part*, 526 F. App'x 768 (9th Cir. 2013) (vacating sanction amount).

Mr. Reznick signed the Hospice's petition, thus certifying that he had undertaken a reasonable inquiry that the petition was not filed for an

improper purpose and that the allegations therein had evidentiary support. Yet, as discussed above, Mr. Reznick later admitted that he did not perform due diligence to verify that he had authority to sign the petition, did not know who owned or controlled the Hospice, had no evidence as to the "legitimacy" of Mr. Patel's and Dr. De La Llana's representations, and knew that the information he had been given was "bullsh*t" that did not "pass the smell test." His signature on the petition and continued advocacy for the viability of the petition thus violated Rule 9011.

## CONCLUSION

The bankruptcy court did not err. We AFFIRM.